IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONY PITTMAN and AL DEMEKE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3174 |
| | § | |
| GENERAL NUTRITION CORP., TOM DOWD, and EILEEN SCOTT, | § | |
| | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Pending before the Court is Defendants' motion to dismiss for failure to state a claim and lack of personal jurisdiction over individual defendants. The parties have responded and replied to the pending motion. After reviewing the parties' submissions, the record, and the applicable authorities, the Court determines that Defendants' partial motion to dismiss [Doc. # 42] should be granted.

### I.   BACKGROUND FACTS

This is an employment case in which Plaintiffs claim that they have been discriminated against based on their race, color, and/or national origin.[1] Plaintiff Al

---

[1] Plaintiffs' First Amended Complaint, Docket Entry No. 33, at ¶¶ 13-30.

Demeke ("Demeke") is a Black American citizen of Ethiopian origin.[2] Demeke has been employed by General Nutrition Corporation ("GNC") since 1979 in various capacities, including Sales Associate, Store Manager, Senior Store Manager, and District Manager.[3] In 1986, he was promoted to the position of Regional Sales Director located in Houston, Texas.[4] Demeke presently still holds this position.[5] Demeke claims that he has excelled in all annual performance evaluations conducted by GNC and has won several awards for outstanding performance as a Regional Sales Director.[6] He alleges that he has requested since 1988 to be promoted to Divisional Sales Director, but has never been given an interview.[7] Demeke contends that GNC does not advertise or post vacant positions and that promotion to such positions are typically filled without any applications or interviews.[8] According to Demeke, over the years, less qualified and/or less tenured employees of Caucasian race have been promoted to Division Sales

---

[2] *Id.*, at ¶ 10(a).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*, at ¶¶ 10(b), (e).

[7] *Id.*, at ¶ 10(c).

[8] *Id.*, at ¶ 10(i).

Director over him.[9]

Plaintiff Tony Pittman ("Pittman"), a Caucasian American citizen, was employed by GNC from 1983 to February 2005, and held positions of Store Manager, Senior Store Manager, Regional Sales Director, Director of Marketing, Senior Director of Franchise Operations, Divisional Sales Director, and Interim Vice President.[10] In 2002, Pittman became a Divisional Sales Director and Demeke's immediate supervisor.[11] In September 2003, Pittman was invited to GNC's headquarters in Pittsburgh, Pennsylvania for discussions with Defendant Tom Dowd ("Dowd"), GNC's Senior Vice President of Retail Stores, Defendant Eileen Scott ("Scott"), GNC's Senior Vice President of Human Resources, and Joe Fortunato, GNC's Senior Vice President of Retail Division.[12] At the meeting, Dowd informed Pittman that Pittman had been promoted to the position of Vice President of Division II; Pittman was instructed to report to duty in his new position in Tampa, Florida on September 30, 2003.[13]

During their discussions, Scott asked Pittman who he planned on replacing

---

[9] *Id.*, at ¶¶ 10(b), (e).

[10] *Id.*, at ¶ 12(a).

[11] *Id.*, at ¶ 10(f).

[12] *Id.*, at ¶ 12(b).

[13] *Id.*, at ¶¶ 12(b)-(c).

himself with as Divisional Sales Director, and Pittman responded that he would promote Demeke. Before leaving Pittsburgh, Pittman asked Dowd if he would be in Tampa on September 30, 2003, to formally make the announcement, and Dowd allegedly responded that he had just been informed by Scott that Pittman intended to promote a "Black person" to replace himself as Divisional Sales Director; that GNC's senior management would not be receptive of such a promotion; and that Dowd expected Pittman to reconsider his decision.[14] Pittman restated to Dowd his decision to promote Demeke.[15]

Soon thereafter, Pittman informed Demeke that Pittman had been promoted and that Demeke should prepare to take over for him as Divisional Sales Director by September 30, 2003.[16] Before assuming the position as Vice President of Division II, Pittman was informed by Dowd that GNC's senior management had "decided to go in a different direction" and would be bringing back Darryl Green, a former Vice President for Division II who previously had been removed as Vice President and terminated, to fill the Vice President position, and Pittman's promotion had been withdrawn.[17] Pittman

---

[14]   *Id.*, at ¶ 12(f).

[15]   *Id.*

[16]   *Id.*, at ¶¶ 10(g), 12(g).

[17]   *Id.*, at ¶ 12(h).

claims that he was qualified for the promotion to the position of Vice President and that Green is not qualified to be rehired by GNC.[18]

Plaintiffs allege that Defendants discriminated against Demeke by failing to promote him into a managerial position during his employment with GNC. Plaintiffs further allege that for advocating the promotion of Demeke, filing a charge with the EEOC, and instituting this lawsuit, Defendants have proceeded to harass and retaliate against Pittman, and on February 3, 2005, summarily terminated his employment with GNC.[19] In their Amended Complaint, Plaintiffs allege race, color, and national origin discrimination against GNC in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"),[20] violations of § 1981 against all Defendants,[21] retaliation and harassment against all Defendants,[22] and intentional infliction of emotional distress against all Defendants.[23]

Defendants seek to dismiss the Amended Complaint as to Dowd and Scott for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), asserting that neither

---

[18] *Id.*, at ¶ 12(i).

[19] *Id.*, at ¶ 12(j).

[20] *Id.*, at ¶¶ 13-19.

[21] *Id.*, at ¶¶ 20-23.

[22] *Id.*, at ¶¶ 25.

[23] *Id.*, at ¶¶ 26-30.

Dowd nor Scott have the requisite minimum contacts with the state of Texas to comply with traditional notions of substantial justice and fair play as required by Constitutional due process.[24] In the alternative, Defendants move to dismiss Plaintiffs' claims of harassment and retaliation against Dowd and Scott, arguing that there is no individual liability under Title VII.[25] Finally, Defendants seek dismissal of Plaintiffs' claim of intentional infliction of emotional distress as to all Defendants pursuant to FED. R. CIV. P. 12(b)(6), maintaining that the allegations contained in the Amended Complaint do not rise to the level of extreme and outrageous behavior needed to state a claim for intentional infliction of emotional distress.[26]

## II. ANALYSIS

### A. FED. R. CIV. P. 12(b)(2)

Plaintiffs bear the burden of establishing this Court's personal jurisdiction over the nonresident defendants who move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure. *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662, 665 (5th Cir. 2004) (citing *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994), *cert. denied*, 513 U.S. 930 (1994)); *Revell v. Lidov*, 317 F.3d 467, 469 (5th

---

[24] Defendants' Motion to Dismiss, Docket Entry No. 42.

[25] *Id.*

[26] *Id.*

Cir. 2002). To satisfy this burden, plaintiffs need only present facts sufficient to establish a *prima facie* case of personal jurisdiction—proof by a preponderance of the evidence is not required. *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Revell*, 317 F.3d at 469.

When making its determination, the Court may consider affidavits, interrogatories, depositions, oral testimony, or any other properly obtained evidentiary materials. *American Realty Trust, Inc.*, 115 Fed. Appx. at 665; *Revell*, 317 F.3d at 469. The Court must accept the uncontroverted allegations contained in the complaint as true, so long as the allegations are not merely conclusory, and resolve all factual conflicts in favor of the plaintiffs. *Central Freight Lines, Inc.*, 322 F.3d at 380. When allegations in the complaint are controverted by affidavit, however, the affidavit prevails over the allegations. *See Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986), *as modified*, 836 F.2d 850 (5th Cir. 1988).

The two-part test for assertion of personal jurisdiction is (1) whether a defendant purposefully established "minimum contacts" within the forum state, and (2) whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-77 (1985); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *American Realty Trust, Inc.*, 115 Fed. Appx. at 665; *Central Freight Lines, Inc.*, 322 F.3d at 380. When personal

jurisdiction is asserted, the "minimum contacts" requirement may be satisfied if either (1) the controversy is "related to" or "arises out of" the nonresident defendant's contacts with the forum ("specific jurisdiction"), or (2) the defendant has "continuous and systematic" contacts with the forum ("general jurisdiction"). *See Burger King, Corp.*, 471 U.S. at 472-76; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-17 (1984); *American Realty Trust, Inc.*, 115 Fed. Appx. at 665; *Central Freight Lines, Inc.*, 322 F.3d at 381; *Wilson*, 20 F.3d at 647. Due process requires that an individual have "fair warning" that a particular activity may subject him or her to the jurisdiction of a foreign sovereign. *Burger King, Corp.*, 471 U.S. at 472. Even a single act can support jurisdiction if it creates a "substantial connection" with the forum. *Id*. at 476 n. 18 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).[27] If the defendants have "continuous and systematic" contacts with the forum state, then the Court can exercise jurisdiction over the defendants generally. *American Realty Trust, Inc.*, 115 Fed. Appx. at 665; *Central Freight Lines, Inc.*, 322 F.3d at 381.

---

[27] The fact that the individual Defendants may have never set foot in Texas is not dispositive. The Supreme Court has held that "[j]urisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State," if there is purposeful conduct by the defendant in or with the forum. *Burger King, Corp.*, 471 U.S. at 476 (emphasis in original); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263-64 (6th Cir. 1996).

Plaintiffs in this case do not argue that Texas has general jurisdiction over the individual Defendants and there is no evidence that Dowd and/or Scott had "systematic and continuous" contacts with Texas.[28] *See Holt Oil & Gas v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987) (defendant's "frequent journeys into Texas for personal and recreational purposes would not by themselves constitute the level of contact which must exist for general jurisdiction to lie"). Thus, the inquiry narrows into whether Texas has specific jurisdiction over the individual Defendants for the causes of action.

"For specific jurisdiction purposes, 'whether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state.'" *American Realty Trust, Inc.*, 115 Fed. Appx. at 666 (quoting *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982)). In making this determination, the Court focus is on whether the defendant's contacts with the forum state should cause him or her to "reasonably anticipate" being subject to jurisdiction in that state. *Id.* (citing *Wilson*, 20

---

[28] Indeed, according to her affidavit, Scott had no contact with Texas except a personal trip she made to Dallas several years ago. *See* Defendants' Memorandum, Docket Entry No. 43, Exh. 1, Scott Affidavit, at ¶ 3. In his affidavit, Dowd represents that he only traveled to Texas two or three times in the past year. *See id.*, Dowd Affidavit, Exh. 2, at ¶ 3.

F.3d at 648-49); *see also Central Freight Lines, Inc.*, 322 F.3d at 383. Additionally, the Court shall examine whether the defendant has "purposefully directed" his or her activities toward the forum state or whether, in contrast, the defendant's contacts with the forum state are simply "random," "fortuitous," or "attenuated contacts." *American Realty Trust, Inc.*, 115 Fed. Appx. at 666; *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 337 (5th Cir. 1999) (citing *Burger King Corp.*, 471 U.S. at 475); *Wilson*, 20 F.3d at 648-49.

Here, Plaintiffs have not alleged facts demonstrating that Dowd and Scott "purposefully availed" themselves as individuals of the benefits and protections of Texas. Neither Dowd nor Scott should have "reasonably anticipated" being haled into Court in Texas because of a single meeting with Pittman in Pennsylvania where Pittman was considered for a promotion that would have caused him to move to Florida.[29] Contrary to Plaintiffs' contention, there is no evidence that Dowd or Scott took any specific action indicating that they intended to harm Plaintiffs in Texas. Any connection Dowd and Scott have to this litigation occurred in Pennsylvania. Similar to *American Realty Trust, Inc.*, the Court finds that "[t]o the extent this case relates to Texas at all, it does so only through 'the mere fortuity that [the plaintiffs] happen[] to be [] residents of [Texas].'" 115 Fed. Appx. at 666. Because Dowd and Scott have insufficient contacts

---

[29] *See* Defendants' Memorandum, Docket Entry No. 43, at Exhs. 1 and 2, at ¶ 4.

with Texas, Plaintiffs' claims as to Dowd and Scott must be dismissed for lack of personal jurisdiction.[30]

## B.     FED. R. CIV. P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir.), *cert. denied*, ___U.S.___, 125 S. Ct. 153 (2004) (citing *Lowrey v. Tex*as *A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). The complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true. *Id.* A claim may only be dismissed if the plaintiff is not entitled to relief under any set of facts or any possible theory of recovery that he could prove consistent with the allegations in his complaint. *Id.* (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

In deciding whether a claim should be dismissed, this Court must determine whether the complaint states a valid claim for relief when the pleading is construed in the light most favorable to the plaintiff and with every doubt resolved on the plaintiff's

---

[30]     Notwithstanding insufficient minimum contacts with Texas, jurisdiction over Dowd and Scott would still be inappropriate as it would violate fundamental fairness. To assert jurisdiction over Dowd and Scott would mean corporate managers could be hauled into court in their individual capacities throughout the country for the sole reason that a decision they made affected someone in another jurisdiction. This clearly violates the notion of fundamental fairness. *See Central Freight Lines, Inc.*, 322 F.3d at 384 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987)).

behalf. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The plaintiff's complaint must contain allegations of every material point necessary to sustain recovery. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Statements that merely create a suspicion that the plaintiff may have a right of action do not foreclose a motion to dismiss. *Id.* Furthermore, legal conclusions, conclusory allegations, and unwarranted deductions of fact do not suffice to prevent dismissal. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004). If the plaintiff fails to allege a necessary element to obtain relief, then dismissal is proper. *Campbell*, 43 F.3d at 975. A motion to dismiss should also be granted when a successful affirmative defense appears on the face of the pleadings. *Kansa Reinsurance Co. v. Congressional Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

### 1. Individual Liability Under Title VII

Plaintiffs cannot maintain an action under Title VII for retaliation and harassment against the individual Defendants.[31] It is well established in the Fifth Circuit that Title VII liability does not attach to individuals acting in their individual capacity, as they are not "employers," as that term is defined in Title VII. *See Felton v. Polles*, 315 F.3d 470, 478 (5th Cir. 2002); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002);

---

[31] *See* Plaintiffs' First Amended Complaint, Docket Entry No. 33, at ¶ 25.

*Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Grant v. Lone Star Co.*, 21 F.3d 649, 651 (5th Cir.), *cert. denied*, 513 U.S. 1015 (1994). In their response to Defendants' motion, Plaintiffs assert that their retaliation and harassment claims are brought against the individual Defendants only under § 1981, not Title VII. Thus, Rule 12(b)(6) provides an alternate ground for dismissal of Plaintiffs' claims under Title VII against Pittman and Scott.[32]

### 2. Intentional Infliction of Emotional Distress

Under Texas law, four factors must be met in establishing a claim for intentional infliction of emotional distress: (1) defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions caused plaintiff emotional distress; and (4) plaintiff's emotional distress was severe. *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). In Texas, the tort of intentional infliction of emotional distress is a "gap-filler." *Id*. at 447. A "gap-filler" tort is "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a

---

[32] *See* Plaintiffs' Response, Docket Entry No. 44, at 8; In their reply, Defendants agree that individual defendants can be sued under § 1981. *See* Defendants' Reply, Docket Entry No. 46, at 3. The Fifth Circuit has not yet discussed the full parameters of § 1981 liability against individual supervisors; however, it has recognized that other circuit courts have "suggested situations in which § 1981 liability may lie against individual defendants." *Foley v. University of Houston Sys.*, 355 F.3d 333, 338 n.7 (5th Cir. 2003). This issue is largely academic because there is no personal jurisdiction over the individual defendants on any claim.

manner so unusual that the victim has no other recognized theory of redress." *Id*.

In *Hoffman-LaRoche*, the Texas Supreme Court held that a plaintiff cannot circumvent statutory remedies by collecting damages based on an intentional infliction of emotional distress claim. *See id*. at 447. "If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction [of emotional distress] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Id*. at 448. Consequently, when a plaintiff alleges a claim for intentional infliction of emotional distress based on the same facts making up their Title VII and § 1981 claims, the former is preempted. *See Stewart v. Houston Lighting & Power Co.*, 998 F. Supp. 746, 757 (S.D. Tex. 1998) (Kent, J.) (citing *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996)).

In this case, in their Amended Complaint, Plaintiffs base their intentional infliction of emotional distress claim on allegations that: (1) they informed their friends, family and co-workers of their promotions; (2) Pittman made preparations to assume the duties of a Vice President and to move to Florida; and (3) Demeke made arrangements to assume the position of Divisional Sales Director.[33] Defendants assert that Plaintiffs' factual allegations do not support the "extreme and outrageous" element required for a

---

[33] Plaintiffs' First Amended Complaint, Docket Entry No. 33, at ¶ 26.

claim for intentional infliction of emotional distress.[34] Plaintiffs argue that, because they have raised a discrimination claim, the actions of defendants are outrageous.[35]

Plaintiffs respond that outrageous conduct against Demeke is established by the number of times he was passed over for promotion.[36] With regard to Pittman, Plaintiffs maintain that the alleged denial of his promotion and retaliatory discharge were outrageous.[37] In reply, Defendants contend that the vast majority of decisions Demeke references regarding the Division Sales Director position were made before 2002; hence, they would be barred by the two-year statute of limitations.[38] Thus, according to Defendants, Demeke is simply challenging a few employment decisions. With regard to Pittman, Defendants contend that, while the underlying claims are clearly disputed by Defendants, Pittman's emotional distress claim arises from basic employment decisions for which he already have a remedy under the discrimination laws.[39]

Because Plaintiffs' tort claim for intentional infliction of emotional distress, Title VII and § 1981 claim arise from identical factual allegations, their intentional infliction

---

[34] Defendants' Memorandum, Docket Entry No. 43, at 9-11.

[35] Plaintiffs' Response, Docket Entry No. 44, at 10-12.

[36] *Id.*, at 11.

[37] *Id.*, at 11-12.

[38] Defendants' Reply, Docket Entry No. 46, at 4; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003.

[39] Defendants' Reply, Docket Entry No. 46, at 4.

of emotional distress claims cannot survive. *See Hoffman-LaRoche*, 144 S.W.2d at 447-48. In any event, the facts alleged by Plaintiffs do not begin to reach the level of egregiousness that the Texas Supreme Court requires to support such a cause of action.[40] *See GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612-13 (Tex. 1999) (commenting that mere insults, indignities, threats, annoyances and petty oppressions do not rise to the level of extreme and outrageous conduct and that the conduct required for an intentional infliction of emotional distress cause of action in the workplace exists only in the most unusual of circumstances); *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999) (explaining that, in order the sustain a claim for intentional infliction of emotional distress under Texas law, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). Thus, Plaintiffs' claims for intentional infliction of emotional distress against all Defendants must be dismissed.

---

[40] Under Fifth Circuit jurisprudence, in the employment context, the required element of "extreme and outrageous" conduct has been narrowly construed. An employer's deplorable conduct does not constitute "extreme and outrageous" conduct except in the most unusual cases. *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) (citing *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991).

### III. CONCLUSION

The Court concludes that it lacks personal jurisdiction over the individual Defendants and that Plaintiffs' claim for intentional infliction of emotional distress fails to state a claim upon which relief can be granted. It is therefore

**ORDERED** that Defendants' partial motion to dismiss [Doc. # 42] is **GRANTED**. Plaintiffs' claims against Defendants Dowd and Scott are **DISMISSED** for lack of personal jurisdiction. Plaintiffs' claim for intentional infliction of emotional distress as to Defendants is **DISMISSED** for failure to state a claim upon which relief can be granted.

**SIGNED** at Houston, Texas, on this the **13th** of **July, 2005**.

_____
Nancy F. Atlas
United States District Judge